CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 25, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALUCIOUS WILLIAMS, JR., ) | |
|     Plaintiff, ) | Civil Action No. 7:22-cv-00669 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| GILBERT, *et al.*, ) | United States District Judge |
|     Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Alucious Williams, Jr., is a Virginia Department of Corrections (VDOC) inmate currently incarcerated in North Carolina pursuant to an Interstate Corrections Compact. Proceeding *pro se*, plaintiff brought a lawsuit alleging violations of his constitutional rights during his incarceration at Red Onion State Prison. That suit was severed into several actions, including this one, which alleges claims of excessive force against defendants Cpt. Gilbert, Unit Manager Larry Collins, Sgt. G. Ridings, Sgt. L. Hall, and Correctional Officers Boyd, Philips, Ryan Osborne, Jacob Barnett, Travis Hampton, Michael Ramey, Neely, J. Clifton, and Dakota Hall. (*See* Compl., Dkt. No. 1; Dkt. No. 1-1; Case No. 7:21-cv-222.)

Initially, all the defendants except Ramey moved for summary judgment (Dkt. No. 20); then Ramey filed a separate summary-judgment motion relying on the same grounds as the other defendants (Dkt. No. 38). For the reasons stated below, these motions will be granted.

I. BACKGROUND

Williams alleges that on December 1, 2020, after waiting for permission to use the telephone, he covered his cell window. (Compl. ¶ 22.) Sgt. Ridings was called to plaintiff's cell. Williams asked him about the status of using the phone. Ridings stated that Williams would not receive a phone to use. Unit Manager Collins was called to the cell; at that time, Williams

uncovered his window.  He asked why he was being denied use of the phone.  Collins told him that he did not need to use the phone and that he was going on strip cell.  (*Id.* ¶¶ 23–25.)

Williams refused to be handcuffed and placed on strip cell.  Sgt. Ridings then administrated a spray of mace through the tray slot.  Unit Manager Collins instructed Sgt. Ridings to aim for plaintiff's eyes.  A probe team was called and several officers, including Philips and Osborne, entered plaintiff's cell in full riot gear.  The officers punched Williams in the head and rib cage.  While Williams was lying on his stomach, they began to apply an illegal hold to lift his arm, hyperextending his left shoulder.  Through the application of handcuffs, Williams fractured his right ring finger and suffered lacerations on both wrists.  (*Id.* ¶¶ 26–32.)

Williams was removed from his cell (C-312) and placed in the shower to be decontaminated.  Then he was removed from the shower and placed in four-point restraints.  He was then placed in a cell (C-301) that had a foul odor and had blood, spit, urine, and feces on the walls, toilet, and floor.  (*Id.* ¶¶ 33–35.)

Between 8:30 and 9:30 p.m. on the same day, Officer Hall brought Williams an inventory sheet for his personal property.  He refused to sign it because he was not able to inspect his property.  (*Id.* ¶¶ 36–37.)  He was left in the four-point restraints overnight with no mattress, no suicide smock, and no suicide blanket in harsh temperatures.  (*Id.* ¶ 38.)  Williams' restraints were removed the next morning.  (*Id.* ¶ 40.)

On December 3, 2020, plaintiff was moved from C-301 to C-201.  Once in the cell plaintiff discovered that there was only one bag of property that contained his legal mail and paperwork.  Several personal items, including a music player, headphones, earbuds, and some clothing, were missing.  (*Id.* ¶ 48.)  The items were eventually returned to him.  (*Id.* ¶¶ 57–58.)

Williams brings the following claims in this action: (1) defendants Ramey, Osborne, Barnett, and Hampton used excessive force against plaintiff on December 1, 2020, in violation of his Eighth Amendment rights, Compl. ¶¶ 31–33, 61; (2) defendant Collins failed to protect Williams on December 1, 2020, from the actions of his subordinates in violation of his Eighth Amendment rights, *id.* at ¶¶ 28, 62; (3) defendant Ridings used excessive force against Williams on December 1, 2020, in violation of his Eighth Amendment rights, *id.* at ¶¶ 27–28, 63; (4) defendant Ridings denied him the use of the telephone in violation of his Fourteenth Amendment rights, *Id.* at ¶¶ 23, 63; (5) defendant Sgt. L. Hall failed to intervene and harassed Williams in violation of his Eighth Amendment rights, *id.* at ¶¶ 43–46, 64; (6) defendant Sgt. L. Hall deprived him of his personal property and his laundry in violation of his Fourteenth Amendment rights, *id.* at ¶¶ 53, 64; (7) defendants Neely, Boyd and Dakota Hall deprived him of his personal property in violation of his Fourteenth Amendment rights, *id.* at ¶¶ 37, 51, 55, 65; and (8) defendants Collins and Ridings caused him to be housed in an unsanitary cell with harsh conditions while in four-point restraints, as well as failed to intervene in assisting with his property, in violation of his Eighth Amendment rights, *id.* at ¶¶ 35, 38, 51–52, 66.

**Exhaustion of Administrative Remedies**

In support of their motions for summary judgment, defendants submit the affidavit of C. Vilbrandt, Grievance Coordinator at Red Onion. (Vilbrandt Aff., Dkt. Nos. 21-1, 39-1.)[1] Vilbrandt oversees the daily operations of the Inmate Grievance Department at Red Onion. Defendants' sole argument in favor of summary judgment is that Williams failed to exhaust his administrative remedies under the VDOC's grievance procedure prior to filing this lawsuit.[2]

---

[1] The two affidavits and the enclosed attachments are identical.

[2] Defendants reserve the right to file a motion for summary judgment on the merits if the court rules against them in this motion.

VDOC Operating Procedure (OP) 866.1, Offender Grievance Procedure, is a mechanism for inmates to resolve complaints and allows corrections officials a means to evaluate potential problems and, if necessary, correct said problems in a timely manner.  Each offender is entitled to use the grievance procedure for problem resolution.  (Vilbrandt Aff. ¶ 5, Encl. A.)

OP 866.1 provides that all issues which affect the grievant personally are grievable except those pertaining to policies, procedures, and decisions of the Virginia Parole Board, disciplinary proceedings, State and Federal Court decisions, laws and regulations, and other matters beyond the control of the VDOC.  Grievances that do not meet the filing requirements of OP 866.1 are returned to the offender within two working days from the receipt noting the reason for return on the intake section of the grievance form.  The offender is instructed how to remedy any problems with the grievance.  (Vilbrandt Aff. ¶ 6.)

Regular Grievances must be submitted within thirty calendar days from the date of the incident.  Before submitting a regular grievance, an inmate must demonstrate that she made a good faith effort to informally resolve the complaint, which can be done by submitting a written/informal complaint.  Prison staff should respond to the offender's Informal Complaint within 15 calendar days to ensure that informal responses are provided prior to the expiration of the 30-day time period in which an offender may file his Regular Grievance.  If the offender is dissatisfied with the response to the Informal Complaint, the offender may submit a Regular Grievance on the issue.  If he submits a Regular Grievance, he is required to attach the Informal Complaint as documentation of his attempt to resolve the issue informally.  Even if an inmate has not received a response to an Informal Complaint, the inmate must still submit the Regular Grievance within 30 days from the date of the occurrence/incident or discovery of the occurrence/incident.  (Vilbrandt Aff. ¶ 7.)

Plaintiff has been incarcerated at Red Onion on several occasions. During the time relevant to the claims in this lawsuit, Williams was confined at Red Onion from October 30, 2017, through October 12, 2021, when he was temporarily transferred to Marion Correctional Treatment Center. Offenders are oriented to the Offender Grievance Procedure when they are initially received into the VDOC, as well as each time they are transferred to a different facility. During his confinement at Red Onion, Williams had access to and utilized the grievance procedure and had approximately six Regular Grievances accepted for intake and processed through Level I (one grievance) or Level II (five grievances). Williams also had approximately 80 Informal Complaints accepted and processed at Red Onion for this time period. (Vilbrandt Aff. ¶ 12.)

Based on Williams' grievance records, three Informal Complaints were received on December 10, 2020, and are relevant to the claims in this lawsuit. Williams also submitted an Emergency Grievance on December 7, 2020, concerning his personal property and "inhumane" conditions. He also submitted one Informal Complaint/ Written Complaint and one Regular Grievance concerning the December 1, 2020 excessive force allegations against these defendants. While Williams submitted four Informal Complaints and one Regular Grievance concerning his allegations against these defendants in this lawsuit, no Regular Grievance was accepted for intake and appealed to the highest level of review. According to the Offender Grievance Procedure, Informal Complaints and Emergency Grievances do not qualify for purposes of grievance exhaustion. (Vilbrandt Aff. ¶¶ 12–13.)

On December 7, 2020, Williams submitted Emergency Grievance (Log #179402) in which he mentions that he has been deprived of his personal property and state-issued clothing since December 3, 2020. He states that due to his denial of personal property, he does not have

any hygiene products. He further states that he has given staff several laundry request forms, but he is being deprived of these items and exposed to inhumane conditions. On December 7, 2020, Williams was notified by staff that he must use the property procedure and submit an Informal Grievance as his grievance did not meet the definition of an emergency. (Vilbrandt Aff. ¶ 14.)

Plaintiff submitted an Informal Complaint (#ROSP-20-INF-02277) on December 8, 2020, mentioning that from December 2 through December 8, 2020, Red Onion staff members and other inmates conspired to commit fraud against him. He states that because of this conspiracy, he was beaten, placed in four-point restraints, and had his property destroyed. He further states that he was deprived of laundry and personal hygiene products and so he notified Sgt. Ridings and Sgt. Hall by giving them laundry request forms. On December 10, 2020, the Informal Complaint was received by the grievance department. A response was given on December 22. (Vilbrandt Aff. ¶ 15, Encl. D.)

On December 8, 2020, plaintiff submitted another Informal Complaint (#ROSP-20-INF-02278). Williams mentions in this complaint that on December 2, 2020, while he was placed in a strip cell, Correctional Officer Philips inventoried his property and Officers Hall and Neely took his belongings to property. However, on December 4, 2020, when his property was returned to him, many items were missing. This Informal Complaint was received on December 10 and responded to on December 16, 2020. (Vilbrandt Aff. ¶ 16, Encl. E.)

Williams submitted a third Informal Complaint (#ROSP-20-INF-02279) on December 8, 2020. He mentions that on December 2, during a cell extraction, he was sprayed in the face with mace and the extraction team punched him in the head and body, applied an illegal hold, and attempted to break his arm, hand, fingers, and wrist. Plaintiff was placed in four-point restraints and left in a strip cell for 48 hours. Williams notified staff of his injuries but was refused

medical treatment. This complaint was received on December 10, 2020, and responded to by Cpt. S. Franklin. (Vilbrandt Aff. ¶ 17, Encl. F.)

On June 22, 2021, Williams submitted a Written Complaint/Informal Complaint (#ROSP-21-INF-01142) in which he mentions that on several occasions, including on December 1, 2020, he was the victim of attempts to kill him by multiple officers and that Collins, the Intelligence Unit, and the administration were all aware, but kept these officers employed. On June 23, 2021, the complaint was received by the grievance department; a response was issued on July 2. (Vilbrandt Aff. ¶ 18, Encl. G.)

Finally, Williams submitted a Regular Grievance on July 24, 2021, complaining that on multiple occasions, including on December 1, 2020, he was the victim of assaults and several attempts to kill him because he utilized the prison grievance process. On July 27, 2021, the Regular Grievance was rejected at intake by C. Meade, the prior Grievance Coordinator, due to an expired filing period. Williams alleges on the Regular Grievance that the date of the incident was February 27, 2021. Williams appealed the intake decision to the Regional Ombudsman. The intake decision was upheld on August 30, 2021. This was a final decision. (Vilbrandt Aff. ¶ 19, Encl. G.)

At all times when he was incarcerated at Red Onion, Williams had unimpeded access to Informal Complaint/Written Complaint forms and Regular Grievance forms. Moreover, Williams' grievance records demonstrate that he has had access to and utilized the grievance procedure on several occasions during his confinement at Red Onion. However, based on plaintiff's grievance records, he has not had a Regular Grievance that was accepted into the grievance process regarding his claims alleged in this lawsuit. (Vilbrandt Aff. ¶ 20.)

II.  ANALYSIS

**A.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.* at 586.  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25.  Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

The court is charged with liberally construing complaints filed by *pro se* litigants, to allow them to fully develop potentially meritorious cases.  *See Cruz v. Beto*, 405 U.S. 319

8

(1972); *Haines v. Kerner*, 404 U.S. 519 (1972). At the summary judgment stage, however, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. *See Chisolm v. Moultrie*, C/A No. 4:21-03506-BHH-TER, 2023 WL 3631798, at *1 (D.S.C. May 2, 2023). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

**B. Exhaustion under the Prison Litigation Reform Act (PLRA)**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). An inmate's failure to follow the required procedures of the prison administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion serves "two main purposes." *Woodford*, 548 U.S. at 89. First, the exhaustion requirement "protects administrative agency authority" by allowing the agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Id.* Second,

9

"exhaustion promotes efficiency" because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Shipp v. Punturi*, Civil Action No. 7:21cv00414, 2023 WL 7125259, at *3 (W.D. Va. Oct. 30, 2023) (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)). Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

As detailed herein, Williams did not exhaust his administrative remedies prior to filing this lawsuit. This is demonstrated by the evidence providing that Vilbrandt conducted a review of Williams' grievance file. Williams filed several Informal Complaints, but these types of complaints are insufficient, standing alone, for exhaustion purposes. Instead, an inmate must pursue a Regular Grievance through all applicable levels of appeal. Here, Williams filed a Regular Grievance that was rejected at intake as untimely. Thus, Williams did not use "all steps that the agency holds out," and he did not use those steps "properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90.

In his response to the argument that Williams did not properly exhaust available administrative remedies, Williams asserts that the defendants would "try to intimidate him from filing complaints by denying him of the phone, challenging him to fights, denying access to the kiosk." (Dkt. No. 48 at 23 of 27.) Williams also references a "scheme" that involved "planting a unknown device or chemical agent on the plaintiff's person that enables other people to know his thoughts, emotions, and actions . . ." (*Id.*) This unknown device "caused him to go through a period of being in a lethargic dream-like state where he could not eat and had no energy." (*Id.*)

10

Finally, Williams asserts that defendants used the long-term segregation program as "leverage" and he was "illegally held in this status from November 9, 2020 to May 12, 2022," which "prevented him from taking advantage of the grievance process through machination, misrepresentation, and intimidation." (*Id.* at 24 of 27.) These unsworn assertions and allegations are insufficient to defeat summary judgment. It is "well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment," and that "unsworn statements do not qualify as affidavits and are not considered by the Court when ruling on a motion for summary judgment." *Solis v. Prince George's Cnty.*, 153 F. Supp. 2d 793, 798–99 (D. Md. 2001) (citing *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)). Because submitting "an affidavit in compliance with Rule 56(e) is not an onerous task," *id.* at 799, the court will not consider the unsworn evidence.[3]

Moreover, Williams' assertions are belied by the undisputed evidence that Williams had access to the grievance procedure and took advantage of the procedure on several occasions. Williams lacks a sufficient justification for his failure to exhaust the claims in this case prior to filing suit. Therefore, Williams' suit is barred by the PLRA, and defendants are entitled to summary judgment. *See, e.g.*, *Tracey v. Kirkland Corr. Inst.*, Civil Action No. 1:12-cv-01614-JMC, 2013 WL 3049410, at *4 (D.S.C. June 17, 2013) (finding that defendant is entitled to

---

[3] Williams did provide a sworn affidavit, and as it pertains to exhaustion, Williams avers that certain documentation in his possession "will prove that I attempted to exhaust administrative remedies. That the grievance system at Red Onion State Prison at that time was unavailable due to their staff denying me of grievance forms and issuing responses to my informal complaints that were blatantly false, proving that their staff was unwilling to offer any relief." (Dkt. No. 48-1 at 7–8.) Similarly, Williams' verified complaint describes his efforts to exhaust. (*See* Compl. ¶ 59.) These conclusory allegations are insufficient to defeat summary judgment. *See, e.g.*, *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ("[S]ummary judgment affidavits cannot be conclusory or based upon hearsay."); *Harvey v. Hobbs*, No. 1:20-cv-605-MSN-WEF, 2023 WL 6445853, at *9 (E.D. Va. Sept. 29, 2023) (the non-moving party cannot defeat a properly supported summary judgment motion "by simply substituting the conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"); *Jones v. Stamper*, No. 1:12cv352 (AJT/IDD), 2013 WL 6448847, at *2 n.2 (E.D. Va. Dec. 6, 2013) (explaining that a *pro se* prisoner's sworn pleading or brief with a "declaration under oath . . . is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity").

summary judgment on exhaustion issue where "a review of Plaintiff's grievance history reveals no grievances filed before the initiation of this litigation" and plaintiff's "vague and general allegations" that grievance forms were "not readily available" are "insufficient to overcome the undisputed evidence that he has failed to show any concrete attempts to exhaust his administrative remedies on any of his claims").

### III.  CONCLUSION

For these reasons, the court will issue an appropriate order granting the motions for summary judgment and entering final judgment in this matter.

Entered: March 24, 2024.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge